ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2010 JUN 15 P 3:31
CLERK_____
S.D. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| NATHANIEL THOMAS DUNN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 309-087 |
| | ) | |
| CORRECTIONS CORPORATION OF AMERICA; WHEELER CORRECTIONAL FACILITY; MEDICAL SERVICES, Wheeler Correctional Facility; GEORGIA DEPARTMENT OF CORRECTIONS; BRIAN OWENS, Commissioner; RALPH KEMP, Warden; O. RODRIGUEZ, Deputy Warden of Care and Treatment; WILLIAM CONNER, Deputy Warden of Security; DR. PARK, Dentist; FNU SMITH, Investigator; P. CLARK, Medical Administrator; DR. SIGHTLER, Head Physician; FNU EVANS, Grievance Coordinator; FNU SIKES, Investigator; FNU HARRIS, Captain; FNU HARDEN, Correctional Officer; FNU EDMONDS, Correctional Officer; FNU DEMMONS, Correctional Officer; and JOHN DOES 1, 2, and 3, | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Men's State Prison in Hardwick, Georgia,[1] commenced the above-captioned case pursuant to 42 U.S.C. § 1983. Because he is proceeding *in forma pauperis*, Plaintiff's complaint must be screened to protect potential defendants.

---

[1] At all times relevant to the events giving rise to his amended complaint, Plaintiff was incarcerated at Wheeler Correctional Facility in Alamo, Georgia.

Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, the Court previously reviewed Plaintiff's complaint in conformity with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 12.) Plaintiff has submitted an amended complaint (doc. no. 13), and it is this document that the Court will now screen.

## I. BACKGROUND

*Liberally* construing Plaintiff's amended complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Brian Owens, the Commissioner of the Georgia Department of Corrections ("GDOC"); (2) Ralph Kemp, Warden of Wheeler Correctional Facility ("WCF"); (3) O. Rodriguez, Deputy Warden of Care and Treatment at WCF; (4) Dr. Park, a dentist at WCF; (5) FNU Smith, an agent with the Inmate Affairs for the GDOC; (6) P. Clark, Medical Administrator at WCF; (7) Dr. Sightler, the head physician at WCF; (8) FNU Evans, the grievance coordinator at WCF; (9) FNU Sikes, an investigator at WCF; (10) William Conner, Deputy Warden of Security at WCF; (11) FNU Harris, Captain at WCF; (12) FNU Harden, a correctional officer at WCF; (13) FNU Johnson, a correctional officer at WCF; (14) FNU Edmonds, a correctional officer at WCF; (15) FNU Demmons, a correctional officer at WCF; and (16) John Does 1, 2, and 3. (Doc. no. 13, pp. 1, 6-8, 13.) Plaintiff is suing Defendants Owens, Kemp, Rodriguez, Park, Smith, Clark, Sightler, Evans, and Sikes in both their individual and official capacities; the remaining Defendants are sued in their individual capacities only. (Id. at 6-8.)

According to Plaintiff, he injured his back on July 15, 2008, while cleaning the showers and restrooms in his dorm at WCF, which has caused him pain in his lower back and left leg. (Id. at 8.) Plaintiff further alleges that he reported the incident to Defendants Edmonds and Demmons, who failed to ensure that he was provided with the necessary medical care. (Id.) Plaintiff goes on to state that "medical" refused to see him for two days following the July 15th incident and that, as a result, he suffered an additional injury, which he refers to as "colonic ileus" and had to be hospitalized. (Id. at 8-9.) According to Plaintiff, while he was hospitalized, x-rays revealed that he had a herniated disc in his lower back, and it was recommended that Plaintiff see a neurologist. (Id. at 9.) Plaintiff goes on to allege that he eventually saw "Dr. Michael Y." ("Dr. Y.") on October 23, 2008, in Savannah, Georgia. (Id.) Dr. Y. allegedly told Plaintiff that he should have seen him earlier and immediately scheduled Plaintiff for surgery. (Id.) According to Plaintiff, the damage to his disc has now also caused permanent nerve damage. (Id.)

Following his surgery, Plaintiff apparently had a follow-up visit with Dr. Y. in Savannah on January 12, 2009, and was driven there by Defendants Harden and Johnson. (Id.). On the return trip to WCF, Plaintiff was purportedly handcuffed and shackled but was not restrained by a seatbelt, as the transport van was not equipped with them. (Id. at 10, 13.) According to Plaintiff, during the return trip, Defendant Harden slammed on the brakes to avoid an accident, which resulted in Plaintiff being "slammed into [a] mesh partition," which Plaintiff states caused further injury to his back and left leg, as well as a headache and "tingling" in his mouth. (Id.) Plaintiff's teeth were also allegedly dislocated as a result and later fell out. (See id. at 14.) According to Plaintiff, another MRI was performed after the near-accident on January 12th, which allegedly revealed "new injuries." (Id. at 11.) While Dr.

3

Y. did not perform surgery at this time, Plaintiff reports that Dr. Y did recommend that Plaintiff receive injections and begin physical therapy. (Id.) Plaintiff blames Defendants Harris, Kemp, Conner, Owens, and John Does 1 and 2 for failing to train Defendants Harden and Johnson to transport him properly and for allowing Plaintiff to be transported in a vehicle without seatbelts, even though they knew of this "unsaf[e] environment." (Id. at 13.)

Plaintiff goes on to allege that he also sought treatment at WCF for the injuries to his back, legs, and mouth following the near-accident on January 12th. However, Officer Harden allegedly told Plaintiff he could not receive medical attention until he filled out an accident report. (Id. at 11.) Plaintiff states that he later completed an accident report, but when he eventually saw Defendant Rodriguez for treatment of the injuries disclosed in the report, Defendant Rodriguez yelled at Plaintiff and refused to treat him. (Id.) Plaintiff also appears to allege that Defendant Park failed to properly treat his dental needs following the January 12th accident. (Id. at 12-13.)

After detailing the events surrounding his medical treatment (or lack thereof) while at WCF, Plaintiff goes on to complain that following the January 12th incident, Defendants Clark and Sightler refused to release his medical records to him, even though Plaintiff allegedly followed the proper procedure to obtain those records.[2] (Id. at 11.) Plaintiff states that as a result, he filed a grievance on this issue and that on July 14, 2009, Defendant Smith came to speak to him about resolving the grievance. (Id. at 11-12.) Plaintiff states that at this meeting, he and Defendant Smith reached an agreement that Plaintiff would "drop the grievance" if he received copies of his medical records. (Id. at 12.) Plaintiff alleges that he then signed a form

---

[2]Plaintiff does not state why he wanted his medical records or why Defendants Clark and Sightler refused to release them to him.

4

dropping the grievance but that Defendant Smith only gave him two sheets of paper in return, which apparently were not the medical records Plaintiff had requested. (Id.) Plaintiff goes on to blame Defendant Evans for failing to see that his grievance was handled fairly, as well as Defendant Sikes for failing to investigate Defendant Smith's actions. (Id.) Plaintiff also accuses John Doe 3 of "hinder[ing]" the grievance procedure. (Id. at 13.)

As relief, Plaintiff requests monetary damages from all Defendants, as well as an injunction requiring his missing teeth to be replaced by a "qualified dentist." (Id. at 14-15.) He also requests that physical therapy or other medical treatment with a "medical practitioner" be arranged for the injuries to his back and that Defendants be directed to carry out the medical practitioner's prescribed treatment "without delay." (Id. at 14.)

## II. DISCUSSION

### A. Defendants Not Named in Amended Complaint

In the Court's prior Order directing Plaintiff to amend his complaint, he was warned that his amended complaint would supersede his previously filed complaint. (Doc. no. 12, p. 5 (citing Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994))). Plaintiff was also specifically told that he must name all Defendants in the caption and the body of the amended complaint. (Id. at 6) Upon review of the amended complaint, the Court finds that Plaintiff no longer names the Corrections Corporation of America, WCF, Medical Services, or the GDOC as parties to this lawsuit. Accordingly, these Defendants should be dismissed from this lawsuit.

### B. Official Capacity Claims

As noted above, Plaintiff has sued Defendants Owens, Kemp, Rodriguez, Park, Smith, Clark, Sightler, Evans, and Sikes in both their official and individual capacities for monetary

5

damages. However, Plaintiff's official capacity claims for monetary damages against these Defendants fail as a matter of law. Indeed, when a state officer is sued in his or her official capacity, the suit is actually against the state. Kentucky v. Graham, 473 U.S. 159, 166 (1985). Consequently, a plaintiff seeking money damages from a defendant in his or her official capacity is, in effect, seeking that award from the state. Id. Under the Eleventh Amendment, one cannot sue a state for damages at law unless the state waives its protection. Id. at 169. Thus, to the extent Plaintiff is suing Defendants Owens, Kemp, Rodriguez, Park, Smith, Clark, Sightler, Evans, and Sikes in their official capacities for monetary damages, such claims fail as a matter of law and should be dismissed.

C. **Access to Medical Records**

The Court next turns to Plaintiff's claims that Defendants Sightler and Clark wrongfully refused to allow him access to his medical records. The Supreme Court has held that "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . ." West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted). However, several courts, including a district court within the Eleventh Circuit, have held that a prisoner does not have a liberty interest in his medical records or other constitutional right to access such records. See Brannon v. Thomas County Jail, No. 606-CV-36, 2007 WL 1701815, at *10 (M.D. Ga. June 7, 2007); see also Provencio v. Fetterhoff, No. 09-CV-02403, 2009 WL 5126587, at *1 (D. Colo. Dec. 17, 2009); Cannon v. Mason, No. CIV-08-192, 2009 WL 588581, at *3 (E.D. Okla. Mar. 6, 2009); Ramirez v. Delcore, No. C-07-48, 2007 WL 2142293, at *7 (S.D. Tex. July 25, 2007) (citations omitted), *aff'd*, 267 F. App'x 335 (5th Cir. 2008); Stephens v. Corr. Med. Servs., No. 304-CV-P596, 2006 WL 2734432, at *10 (W.D. Ky. Sept. 21, 2006). Accordingly, Plaintiff's claims that Defendants

6

Sightler and Clark impermissibly refused him access to his medical records should be dismissed as well.

**D.     Grievance Claims**

The Court next turns to Plaintiff's claims against Defendant, Smith, Evans, Sikes, and John Doe 3 as to the handling of the grievance he submitted regarding access to his medical records. As discussed above, Plaintiff accuses Defendant Smith of deceiving him into dropping his grievance and blames Defendant Sikes for failing to investigate the incident involving Defendant Smith and her mishandling of the grievance. (Doc. no. 13, pp. 11-12.) Plaintiff also alleges that Defendant Evans failed to ensure his grievance was handled properly and that John Doe 3 hindered the grievance process. (Id. at 12-13.) That said, "procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous

7

claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, as noted above, Plaintiff has accused Defendants Smith, Evans, Sikes, and John Doe 3 of various acts of misconduct related to the handling of his grievance. However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp. 2d at 731. Therefore, Plaintiff's claims regarding alleged violations of the grievance procedures should be dismissed from this action.

E.     "Seatbelt" Claims

Finally, the Court turns to Plaintiff's claims regarding the lack of seatbelt in the transport van. Specifically, Plaintiff has alleged that Defendants Harden and Johnson acted with deliberate indifference when they failed to use a seatbelt to restrain him in the transport van on January 12, 2009. (Doc. no. 13, pp. 10, 12.) However, Plaintiff admits elsewhere in his complaint that the van was not equipped with seatbelts. (See id. at 13.) Thus, it cannot be

8

said that Defendants Harden and Johnson acted with deliberate indifference when they were not provided with a seatbelt to restrain him during the trip. Accordingly, these claims are without merit and should be dismissed.

Plaintiff has also accused Defendants Harris, Kemp, Conner, Owens, and John Does 1 and 2 of failing to train Defendants Harden and Johnson and for failing to equip the transport vans with seatbelts. However, Plaintiff's claims against these Defendants must fail. Indeed, multiple courts have held that prison officials and police officers do not act with deliberate indifference when they fail to ensure that a prisoner is properly restrained in a vehicle. See Jones v. Dazo, No. CIV-S-09-2974, 2010 WL 1197481, at *2 (E.D. Cal. Mar. 23, 2010); Smith v. King, No. CV 505-041, 2005 WL 2406153 (S.D. Ga. Sept. 27, 2005); Carrasquillo v. City of New York, 324 F. Supp. 2d 428, 437-38 (S.D.N.Y. 2004) (citations omitted). Rather, such actions amount to negligence, which is not actionable under § 1983. See Daniels v. Williams, 474 U.S. 327, 328, 333 (1986) ("[I]njuries inflicted by governmental negligence are not addressed by the United States Constitution . . . ."); see also White v. Oklahoma ex rel. Tulsa County Office of Dist. Attorney, 250 F. Supp.2d 1319, 1329 (N.D. Okla. 2002) ("Mere negligence does not rise to the level of a constitutional tort required under 42 U.S.C. § 1983.") Accordingly, Plaintiff's claims against Defendants Harris, Kemp, Conner, Owens, and John Does 1 and 2 should be dismissed as well.[3]

---

[3] In a simultaneously entered Order, the Court has directed that service of process be effected on (1) Defendants Edmonds and Demmons for failing to ensure that Plaintiff received appropriate medical care following the July 15th incident; (2) Defendant Rodriguez for failing to ensure that Plaintiff received proper medical treatment following the near accident on January 12th; and (3) Defendant Park for failing to treat Plaintiff's dental needs following the near accident on January 12th.

9

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's official capacity claims for monetary damages, grievance claims, and "seatbelt" claims be **DISMISSED** from this action. The Court further **REPORTS** and **RECOMMENDS** that Defendants Correction Corporation of America, WCF, Medical Services, and the GDOC, as well as Defendants Sightler, Clark, Smith, Evans, Sikes, Harden, Johnson, Harris, Owens, Kemp, Conner, and John Does 1, 2, and 3, be **DISMISSED** from this case.

SO REPORTED and RECOMMENDED this 15th day of June, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE